W. W. HOFFMAN AND KATHERINE M. HOFFMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHERINE M. HOFFMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. W. HOFFMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 92414, 96741, 96742. Promulgated August 15, 1939.

*Elden McFarland, Esq., W. H. West, Jr., Esq.,* and *Stephen L. Healey, C. P. A.,* for the petitioners.

*Allen Akin, Esq.,* and *W. G. Ruymann, Esq.,* for the respondent.

462

OPINION.

MURDOCK: The petitioners claim a deduction for 1934 under section 23 (e) (2) of the Revenue Act of 1934. Although the respondent is willing to concede a capital loss in 1935, when title was lost, he contends that there could be no loss from the ownership of real estate while title was retained. The statute allows a deduction for any loss sustained during the taxable year, if incurred in a transaction entered into for profit and not compensated for by insurance or otherwise. It does not distinguish between real and personal property.

The fact is clearly established that the interest of these petitioners in the property became completely worthless in 1934. The mortgage, a first lien, was greatly in excess of the value of the property. There were, in addition, delinquent taxes and water rents. If ownership were to continue, repairs costing about $10,000 would have to be made. The total of these items was about one and one-half times the value of the property. The property had been operating at a loss and renting conditions were growing worse. Foreclosure proceedings were instituted during 1934 and it was known that they would be pressed to permit the mortgagees to gain title. The petitioners fully realized that their equity was completely and permanently lost. Indeed, they considered further ownership a liability and tried to give away their title. There was no reasonable hope that their equity would ever again have any value. The respondent does not call attention to any evidence indicating that the petitioners retained anything of value at the close of 1934. They did retain title to the premises, but that title was devoid of value to them. The mortgagees would not even take it as a gift. Subsequent events corroborate worthlessness in 1934.

The Board said in *A. J. Schwarzler Co.*, 3 B. T. A. 535, that title to real estate can not be lost by abandonment alone. The statute does not make either abandonment or loss of title a condition precedent to the allowance of a deduction for loss. Still, evidence of abandonment may be material here, as in the case of personal property, to show that a permanent and complete loss has occurred from which there is no escape. These petitioners did about everything that they could

to abandon their interest in the property. Cf. *Reuben H. Donnelley Corporation*, 26 B. T. A. 107. They notified the mortgagees of their intention to abandon. They refused to make the payments and repairs necessary to continued operation, although they were able to do those things. They surrendered possession and canceled all contracts with insurance and public utilities companies. They did all of those things voluntarily because they no longer desired to possess any interest in the property. They were moved, of course, by their knowledge that their interest was no longer of any value and, if retained, would require them to make additional expenditures which they deemed entirely unwise. These acts indicate clearly that they were attempting to terminate their ownership, possession, and control and that they no longer cared what became of the property. They had no intention to renew their interest in any way. No way has been suggested whereby they could have abandoned their interest more effectively. Even if there was not a complete legal abandonment, nevertheless, the evidence shows that these petitioners lost their investment in the property in 1934.

The Supreme Court has said that the loss provisions call for a practical, not a legal, test, and, where losses are reasonably certain in fact and ascertainable in amount, their deduction may be justified before they are absolutely realized. *Lucas* v. *American Code Co.*, 280 U. S. 445. Another court said that a sale is unnecessary in establishing a loss where value has become extinct and there is no variable to determine. *DeLoss* v. *Commissioner*, 28 Fed. (2d) 803. Those two cases involved losses upon personal property. Deductions for loss upon the abandonment of worthless real estate have been allowed by the Sixth Circuit Court of Appeals even though the taxpayer retained title. *Rhodes* v. *Commissioner*, 100 Fed. (2d) 996, reversing 34 B. T. A. 212; *Denman* v. *Brumback*, 58 Fed. (2d) 128. A loss upon a mineral lease is sustained when it is abandoned as worthless, *Belridge Oil Co.*, 11 B. T. A. 127; *C. H. Goodwin*, 9 B. T. A. 1209, and the same is true of a mine owned in fee. *Colorado & Utah Coal Co.*, 26 B. T. A. 588. Even the diminution in value of real property resulting from a casualty has been allowed as a loss. *Ferguson* v. *Commissioner*, 59 Fed. (2d) 893; *Whipple* v. *United States*, 25 Fed. (2d) 520; *Mary Cheney Davis*, 16 B. T. A. 65; *F. C. Champlin*, 1 B. T. A. 1255. But under other circumstances a mere diminution in value has been disallowed as a loss. *Coalinga-Mohawk Oil Co.*, 25 B. T. A. 261; affd., 64 Fed. (2d) 262; certiorari denied, 290 U. S. 637.

The Commissioner states that the Board has held consistently that no loss can possibly be sustained as a result of the ownership of real estate as long as title is retained. Despite statements made in *A. J.*

*Schwarzler Co.*, *supra*, and in *Greenleaf Textile Corporation*, 26 B. T. A. 737, supporting the Commissioner, we think the rule contended for by the Commissioner is too broad. *Hancock* v. *Commissioner*, 105 Fed. (2d) 153. Yet it is not necessary to overrule the *Schwarzler* case or any other which followed it. *Consolidated Brick Co.*, 17 B. T. A. 831; *H. M. N. Muhle*, 19 B. T. A. 1247; *Frederick Krauss*, 30 B. T. A. 62; *J. C. Hawkins*, 34 B. T. A. 918 (relied upon in the notice of deficiency); *Derby Realty Corporation*, 35 B. T. A. 335; *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630; and *T. J. Bosquett*, 39 B. T. A. 763, are easily distinguishable from the present case, either on the ground that they presented a failure of proof as to worthlessness and abandonment or because they involved an entirely different point. The *Rhodes* case was distinguished in the *Bosquett* case and the *Brumback* case was distinguished in the *Greenleaf* case. There was no worthlessness in the *Coalinga-Mohawk Oil Co.* case, merely a shrinkage in value.

The evidence in the *Greenleaf* case likewise showed only shrinkage in value, not worthlessness. Loss of title was not imminent and the evidence of abandonment was not strong. The *Rhodes* case was similar in many respects. There the property had been sold for taxes, but there was a period of redemption outlasting the taxable year. No finding of worthlessness of the taxpayer's interest was made and the evidence of abandonment was not convincing. Nevertheless, the Board was reversed and a deduction was allowed.

Perhaps the most difficult case to distinguish is the *Schwarzler* case. There, as here, the liens exceeded the value of the property. However, the excess is not disclosed in the report. It may have been too slight to offset a possible increase in value of the property. This may have had added significance, since loss of title was not imminent. The report merely says in regard to abandonment that the taxpayer "attempted to abandon" the vacant lots. The present case is stronger for the taxpayer than any of the cases cited, including the *Schwarzler*, *Brumback*, and *Rhodes* cases.

Some of the language used by the Board in the *Schwarzler* case tends to support the broad rule which the Commissioner now proposes. It was there said that "losses from dealing in real or personal property, growing out of the ownership thereof, are deductible only when ascertained and determined upon an actual, completed, and closed transaction during the taxable year, and are not sustained through the mental process by which a taxpayer determines that the property is worthless and charges it off on his books while he still retains the title to the property itself." But thereafter many deductions were allowed for losses on worthless personal property while the taxpayer still

retained title, and in some cases the loss was allowed upon abandonment. See Law of Federal Income Taxation, Paul and Mertens, § 26.71 and cases there listed in footnotes. See also *Morris Polin*, 39 B. T. A. 951, where a loss was allowed upon the abandonment of mortgaged real estate. ˙ The allowance of a deduction for loss upon worthless property is not really an exception to the rule that losses are deductible only upon closed transactions. *Hancock* v. *Commissioner, supra.*

The respondent argues that the petitioners did not abandon their interest since they did not expressly waive their right to any proceeds of foreclosure over and above the debt and costs. They never thought either of releasing or retaining those rights because they knew there was not even a remote possibility of there being any excess. The respondent also argues that a practical difficulty would arise if losses were to be allowed while title to real property remained in the taxpayer, since every case could be settled only by litigation. No such difficulty has arisen in regard to losses on personal property, although they have been allowed when property became worthless and was abandoned. The Government frequently disallows losses on personalty in one year on the ground that the property was worthless in a prior year.

The interest of these petitioners in the property actually became worthless within the taxable year 1934. The events of that year were sufficient to identify the occurrence of a loss in that year. They thus sustained an ordinary loss of $66,833.34 in that year from a transaction entered into for profit and are entitled to a deduction of that amount for 1934. Cf. *Hancock* v. *Commissioner, supra; Morris Polin, supra.* The issue for 1935, raised in the alternative, need not be discussed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

HILL dissents.

LEECH, dissenting: Beginning with *A. J. Schwarzler Co.*, 3 B. T. A. 535, followed by many other cases, including *Greenleaf Textile Corporation*, 26 B. T. A. 737; *Frederick Krauss*, 30 B. T. A. 62, and *Morris Polin*, 39 B. T. A. 951, the Board has consistently held that no deductible real estate loss is sustained by a taxpayer so long as he retains title to the real estate. The correctness of this ruling has been affirmed, at least, in *Greenleaf Textile Corporation, supra,* and no case, of which I know, is contradictory, except possibly *Rhodes* v. *Commissioner*, 100 Fed. (2d) 966.

Proceeding upon the basis of that long established and consistently followed theory, the Board then held that no such loss could be sus-

tained by the mortgagor of real estate, upon foreclosure, so long as an equity of redemption existed. *J. C. Hawkins*, 34 B. T. A. 918; affd., 91 Fed. (2d) 354. This holding has likewise been consistently followed and affirmed. *Derby Realty Corporation*, 35 B. T. A. 335; *T. J. Bosquett*, 39 B. T. A. 763; *Morton* v. *Commissioner*, 104 Fed. (2d) 534.[1]

Despite the factual distinction between the first mentioned line of cases and this one, which the majority attempts to draw, I think the basic issue is the same in both and that the holding here is directly *contra* to the rule adopted and followed here.

Undoubtedly there are impressive reasons for the application of the so-called "practical test" in determining when a real estate loss is sustained. But such reasons, as well as those supporting our original position, existed and were considered by the Board and courts before that original position was adopted. I see no reason now to change that position. But, if it is to be reversed, I think that reversal should be clear and unmistakable.

DISNEY agrees with this dissent.

---

[1] Although obviously immaterial here in my judgment, there appears to be no period of redemption in the State of New York. Sec. 548, Real Property Law of New York, McKinney's Consolidated Laws of New York, vol. 49, p. 876.