T.C. Summary Opinion 2011-62

UNITED STATES TAX COURT

JOHN JOSEPH MARTIN, JR., AND MAUREEN ANN MARTIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21247-09S.          Filed May 19, 2011.

John Joseph Martin, Jr., and Maureen Ann Martin, pro sese.

<u>Richard T. Cummings</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.  Pursuant to
section 7463(b), the decision to be entered is not reviewable by
any other court, and this opinion shall not be treated as
precedent for any other case.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code,

and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $3,604 in petitioners' 2006 Federal income tax. The issues for decision are: (1) Whether John Joseph Martin, Jr. (petitioner), received cancellation of indebtedness income of $27,821 and (2) if so, in what year the cancellation of indebtedness income is required to be reported.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Connecticut at the time the petition was filed.

Petitioner attended college in the early 1980s. Petitioner borrowed $19,986.72 from the Connecticut Student Loan Foundation (CSLF) in order to finance his college education. At some point petitioner became delinquent in his loan payments. In 1988 CSLF filed a complaint in the Connecticut Superior Court. Petitioner received personal service of the complaint, failed to appear at the judicial proceeding, and a default judgment was entered on May 17, 1989, for $27,655.30[1] plus court costs of $166.30.

---

[1]CSLF's Motion for Judgment after Default and the accompanying affidavit requested a default judgment of $27,655.45. This amount includes the principal of $19,986.72, accrued interest of $4,061.50, and attorney's fees of $3,607.23. The record does not reflect the reason for the discrepancy.

Petitioner made three payments after the default judgment was entered, totaling $862.50.[2]  CSLF used at least four collection agencies to facilitate collection of the judgment. When one such agency attempted to collect through wage garnishment in 2004, petitioner requested a pregarnishment hearing.  Petitioner initially alleged he had repaid the loan; however, he abandoned that argument after CSLF provided detailed information about the loan and the various actions to collect. Throughout 2005 petitioner and CSLF had discussions concerning a lump-sum payment to pay the debt, and the parties ultimately came to an agreement.[3]  On December 28, 2005, petitioner mailed CSLF a personal check for $45,000 to extinguish his then-outstanding liability of approximately $73,258.[4]  Petitioner enclosed with the check a letter which set out the following condition:  "These funds may only be negotiated by CSLF with the clear agreement that upon clearance of these funds, CSLF shall provide me with a

---

[2]Petitioner made three payments:  $172.50 on June 8, 1989, $230 on Jan. 24, 1990, and $460 on Mar. 28, 1990.

[3]Petitioner missed several deadlines imposed by CSLF for making a lump-sum payment with a bank or cashier's check.  The only terms discussed were the amount of the lump-sum payment, the date of payment, and the method of payment.

[4]The balance due on the default judgment as of Dec. 31, 2005, was $73,258.72.  The parties stipulated that Connecticut law provides for postjudgment interest at the rate of 10 percent annually and that judgments are enforceable for 20 years.

general release and satisfaction evidencing full and final settlement with regard to this matter."

In February 2006 CSLF filed documents in the Connecticut Superior Court evidencing petitioner's satisfaction of the judgment and a release of CSLF's claim against petitioner.  CSLF issued a Form 1099-C, Cancellation of Debt, to petitioner for 2006 reporting income of $27,821.[5]

Petitioners did not report income from cancellation of indebtedness on their 2006 Federal income tax return.  On June 8, 2009, the IRS issued to petitioners a notice of deficiency for the taxable year 2006 determining among other things an increase in tax due to cancellation of indebtedness.  On September 4, 2009, petitioners filed a petition disputing the deficiency.

### Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under certain circumstances, the burden may shift where a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the income tax liability of the taxpayer.  Sec. 7491(a)(1).  Petitioners have neither alleged

---

[5]Although CSLF canceled approximately $28,258 of debt, CSLF issued the Form 1099-C showing $27,821.  The record does not establish the reason for the discrepancy.

that section 7491(a) applies nor established their compliance with the substantiation and recordkeeping requirements.  See sec. 7491(a)(2)(A) and (B).

Gross income includes all income from whatever source derived, including income from discharge of indebtedness.  Sec. 61(a)(12); United States v. Kirby Lumber Co., 284 U.S. 1 (1931). A debt cancellation results in an accession to wealth by effecting a freeing of assets previously offset by the liability arising from the indebtedness.  United States v. Kirby Lumber Co., supra at 3; Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). The amount of the income includable generally is the difference between the face value of the debt and the amount paid in satisfaction of the debt.[6]  Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673.  The income is recognized in the year cancellation occurs.  Montgomery v. Commissioner, 65 T.C. 511, 520 (1975).

A.   Settlement

If the cancellation of all or part of a debt is made to settle a dispute concerning the debt, no income from cancellation of indebtedness arises.  Zarin v. Commissioner, 916 F.2d 110, 115 (3d Cir. 1990), revg. 92 T.C. 1084 (1989); N. Sobel, Inc. v. Commissioner, 40 B.T.A. 1263, 1265 (1939); see also Colonial Sav.

---

[6]The face value of petitioner's debt was in excess of $72,000 because of interest on the default judgment.  Petitioner paid $45,000 to satisfy the debt.

Association v. Commissioner, 85 T.C. 855, 862-863 (1985), affd. 854 F.2d 1001 (7th Cir. 1988). Settlement in such circumstances does not occasion a freeing of assets and accession to income. N. Sobel, Inc. v. Commissioner, supra at 1265.

A payment of a debt for an amount less that the amount claimed by the creditor does not in and of itself constitute evidence of a good-faith dispute concerning the debt. See Rood v. Commissioner, T.C. Memo. 1996-248, affd. without published opinion 122 F.3d 1078 (11th Cir. 1997). Petitioners bear the burden of showing that the settlement with CSLF did not result in income from the cancellation of indebtedness. See Rule 142(a). Petitioner presented two primary arguments to support the theory that the payment represented a legitimate dispute as to the amount of the debt.

Petitioner asserted first that he was entitled to student loan forgiveness on the basis of his residency in Connecticut when he entered the military after the Vietnam War. Petitioner provided no evidence to substantiate such an agreement or plan of student loan forgiveness on this basis. Cf. sec. 108(f).

Petitioner asserted second that CSLF was not entitled to collect on the debt on the basis of the default judgment and postjudgment interest. Rather, petitioner asserted that CSLF was entitled to collect only on the basis of the original student loan, a liability petitioner estimated to be $45,000. Petitioner

provided no evidence to support a finding that the default judgment is void or that the statutory interest on default judgments as provided by Connecticut State law is inapplicable. The record in fact reflects that petitioner was personally served with the complaint filed in the Connecticut Superior Court case and that a default judgment was entered when he failed to appear.

Petitioner did not present any evidence that the basis of the agreement with CSLF to extinguish the debt for less than the full amount was based on these positions or any good-faith claim that he was not liable for some or all of the debt. On this record, we conclude petitioner did not have a good-faith dispute with respect to the indebtedness with CSLF in the amount claimed by the creditor.

B.   Year of Cancellation

The moment it becomes clear that a debt will never have to be paid, that debt must be viewed as having been discharged. Cozzi v. Commissioner, supra. The test for determining that moment requires a practical assessment of the facts and circumstances relating to the likelihood of payment. Brountas v. Commissioner, 74 T.C. 1062, 1074 (1980), supplementing 73 T.C. 491 (1979), vacated and remanded on other grounds 692 F.2d 152 (1st Cir. 1982), affd. in part and revd. in part on other grounds sub nom. CRC Corp. v. Commissioner, 693 F.2d 281 (3d Cir. 1982); see Bickerstaff v. Commissioner, 128 F.2d 366, 367 (5th Cir.

1942), revg. 44 B.T.A. 457 (1941); Kent Homes Inc. v. Commissioner, 55 T.C. 820, 828-831 (1971), revd. on other grounds 455 F.2d 316 (10th Cir. 1972); Cotton v. Commissioner, 25 B.T.A. 1158 (1932), affd. 68 F.2d 436 (D.C. Cir. 1933). Any identifiable event which fixes the loss with certainty may be taken into consideration. United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398 (1927).

Petitioner asserts that any cancellation of indebtedness income should be required to be reported for 2005, when he sent the lump-sum payment to CSLF. Respondent asserts that the income is required to be reported for 2006, the year the release and satisfaction of judgment were filed with the Connecticut Superior Court and the year the Form 1099-C was issued.

The parties provided documents showing that the release and satisfaction of judgment were both executed and filed with the Connecticut Superior Court in 2006. Once CSLF filed the release and satisfaction of judgment with the Connecticut Superior Court, it became clear that the debt would not have to be repaid and was thus canceled. See Cozzi v. Commissioner, supra.

The issuance of a Form 1099-C is an identifiable event, but it is not dispositive of an intent to cancel indebtedness. Owens v. Commissioner, T.C. Memo. 2002-253, affd. in part, revd. in part and remanded 67 Fed. Appx. 253 (5th Cir. 2003). Additionally, an identifiable event includes an agreement to

discharge the indebtedness at less than full consideration. See sec. 1.6050P-1(b)(2)(i)(F), Income Tax Regs.

Petitioner argues that any cancellation occurred in 2005, relying on CSLF's attorney's letter stating that CSLF's acceptance would be withdrawn at midnight December 31, 2005. That letter also stated that CSLF had been very patient with petitioner and would "in all likelihood" withdraw its acceptance of petitioner's settlement offer if funds were not received by December 31, 2005. In fact CSLF had extended the deadline for payment multiple times. There is no evidence that CSLF accepted the condition set forth in petitioner's December 28, 2005, letter before January 1, 2006. The record is insufficient to establish that the parties had a binding agreement in 2005.

Taking into account all of the facts and circumstances surrounding this agreement and ultimate cancellation of indebtedness, we conclude that the cancellation occurred in 2006.

We have considered all of petitioners' contentions and arguments that are not discussed herein, and we conclude they are without merit, irrelevant, and/or moot.

To reflect the foregoing,

Decision will be entered for respondent.